UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES T. MILLER,

        Plaintiff

v.                                Case No. 1:10-cv-665-HJW

OPW FUELING COMPONENTS, INC.,
and RICHARDS INDUSTRIES, INC.,

        Defendants

## ORDER

This matter is before the Court upon the parties' renewed cross-motions for summary judgment (doc. nos. 47, 48). Defendants have filed proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. no. 52). Having fully considered the record, including the pleadings, briefs, exhibits, proposed findings, and applicable authority, the Court will <u>deny</u> the plaintiff's motion and <u>grant</u> the defendants' motion for the following reasons:

**I.  Background**

Plaintiff James Miller was a member of the AFL-CIO, Local 45 B ("Union") (doc. no. 52-1, ¶ 2). He worked for OPW Fueling Components, Inc. ("OPW") from January 7, 1991, until September 7, 2007, when the Union went on strike. Plaintiff had worked for OPW as a Level 2 general laborer making $18.41 per hour (¶ 4). Plaintiff was the chairman of the union bargaining committee, and in such role, was responsible for being familiar with employment benefits (Miller Dep. at 12).

<u>1</u>

On March 12, 2009, the Union made an unconditional offer for its members to return to work (¶ 5). In June of 2009, plaintiff and another co-worker (David Lawson) filed three unfair labor practices charges against OPW and its wholly-owned subsidiary Richards Industries, Inc. ("Richards") on behalf of the striking workers, alleging that OPW and Richards had continued to hire and retain replacement workers in violation of Sections 9(a)(1)and (3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § § 158(a)(1) and (3).[1]

In March of 2010, the National Labor Relations Board ("NLRB") brokered a settlement of the charges. In early April 2010, the parties entered into a written "Settlement Agreement," which was approved and signed by counsel for OPW/Richards and the Union, as well as the NLRB Regional Director (doc. no. 47-1 at 54-55). The Settlement Agreement succinctly indicates that OPW/Richards agreed to pay a "total amount of back pay and interest not to exceed $650,000.00" and contained a "Non-Admissions Clause" indicating that OPW and/or Richards did "not admit that it has in fact, violated the Act." (Id.) A *Laidlaw* list of striking employees was attached to the Settlement Agreement. The NLRB subsequently calculated the back pay and interest for each striking employee. The parties agree that the Settlement Agreement is the only agreement reached by the parties (doc. no. 52-1 at ¶ 9).

---

[1] Defendants acknowledge that if a strike is "economic," an employer must place its strikers on a preferential rehiring list and call them back when an opening becomes available (doc. no. 47 at 8, fn. 3); see Laidlaw Corp. v. N.L.R.B., 414 F.2d 99, 106 (7th Cir. 1969), cert. denied, 397 U.S. 920 (1070); N.L.R.B. v. Fluor Daniel, Inc., 161 F.3d 953, 972-73 (6th Cir. 1998) (observing that "*Laidlaw* held that it was an unfair labor practice for the employer not to have sought out and offered vacancies as they became available to the strikers who had earlier offered to return to work").

OPW issued a settlement check to plaintiff in the amount of $21,225.00 (doc. no. 30-3). In a letter of March 22, 2010, plaintiff was offered employment at Richards as an assembler at the rate of $10.50 per hour (doc. no. 47-1 at 58).[2] The letter advised him that "you will be required to comply with all Richards Industries handbook policies and procedures." Plaintiff received a follow-up letter dated March 25, 2010 from Richards, expressly indicating that if he accepted the employment offer, "your original date of hire will be retained" (doc. no. 47-1 at 99). Plaintiff accepted the offer of employment at Richards and began working there on April 12, 2010. Richards' leave policy was not as generous as OPW's leave policy, and plaintiff was aware that the leave policies were different.

Plaintiff alleges that he was assigned to work testing nozzles over a solvent tank and that his work station was not ventilated (doc. no. 48 at 6). On May 2 and 20, and June 7, 2010, plaintiff indicates he became ill and had to leave work early (doc. no. 48 at 7). On June 23, 2010 plaintiff visited his treating physician, Dr. Christopher Eppley, M.D., who treated plaintiff for a cough and congestion ("bronchial infection") by prescribing antibiotics. Plaintiff requested, and was granted, two weeks of unpaid personal leave, from June 21, 2010 to July 5, 2010. Plaintiff indicates he was unable to work on July 6, and Richards assessed him a point for missing that day because he did not request leave 24 hours in advance.

---

[2] Plaintiff indicates that OPW purchased Richards in 1999, and then closed Richards' Tennessee facility in 2008 and moved the manufacture of all Richards' product lines to OPW's Ohio facility (doc. no. 30, Miller Affidavit, ¶ 12). Although the companies were separate entities, the manufacturing production for OPW and Richards apparently took place at the same Ohio facility as of 2008.

On July 7, 2010, plaintiff visited Dr. Eppley again and took unpaid personal leave for the remainder of the week.

On Friday, July 9, 2010, Dr. Eppley FAXed an "Attending Physician's Statement" to Richards, indicating that he had advised plaintiff to stop working as of June 23rd but that plaintiff could return to work on Monday July 12, 2010 with "no restrictions" (doc. no. 47-1 at 109; 52-1, ¶ 35). Dr. Eppley noted "cough triggered by illness and chemical exposure at work." Plaintiff returned to work on July 12, 2010, but again felt ill and left work early. This was repeated several more times, until plaintiff exhausted his vacation days. Plaintiff's treating physician referred him to a respiratory specialist.

On July 26, 2010, plaintiff requested forms to apply for leave under the Family Medical Leave Act ("FMLA" (doc. no. 52, ¶ 38). The HR department refused to provide the forms, asserting that plaintiff had only worked 27 days at Richards since April 12, 2010, and thus, did not meet the "hours of service" requirement to be eligible for FMLA leave (¶ 40).

The next day, on July 27, 2010, plaintiff saw respiratory specialist, Dr. Phuong Vuong, M.D., who indicated that plaintiff still had a "cough and congestion," but otherwise was in "general good health" (¶ 41). Dr. Vuong prescribed medication, but did not restrict plaintiff from working (¶ 42). Plaintiff was off work on July 26 and 27, 2010. Plaintiff had accumulated the limit of 7.5 "points" under Richards's attendance records and had exhausted his personal leave. Richards terminated plaintiff's employment on July 28, 2010, under its

written attendance policy. At this stage of the proceedings, the parties do not dispute the amount of leave used by plaintiff (doc. no. 52 at ¶¶ 36-38, 41, 43).

On September 24, 2010, plaintiff filed a two-count federal complaint against OPW and Richards, alleging 1) interference with his entitlement to FMLA leave in violation of 29 U.S.C. § 2615(a)(1), and 2) fraudulent misrepresentation under Ohio state law. After discovery concluded, the parties filed cross-motions for summary judgment (doc. no. 47, 48). The pending motions are fully briefed and ripe for consideration.

## II.  Issues Presented

With respect to plaintiff's claim of FMLA interference, the Court will first consider whether, based on the evidence of record, there are any genuine disputes of material fact as to whether plaintiff was eligible for FMLA leave. With respect to plaintiff's state claim of fraudulent misrepresentation, the Court will consider whether it has jurisdiction over the claim, and if so, whether any genuine disputes of material fact preclude summary judgment.

## II.  Standard of Review

Rule 56(a) of the Federal Rules of Civil provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Under Rule 56, the moving party bears the burden of proving that no genuine dispute of material fact exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In doing so, the United States Supreme Court has explained that courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e. disagreement as to legal implications of those facts. Beard v. Banks, 548 U.S. 521, 529 30 (2006).

The district court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A genuine dispute exists "only when there is sufficient evidence on which the jury could reasonably find for the plaintiff." Id. at 252. On summary judgment review, the court's role is not to "weigh the evidence and determine the truth of the matter," but rather, to determine whether there are any genuine disputes of material fact for trial. Id. at 249.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991) ("The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits"). When considering cross-motions, the Court must "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under

consideration." Id. at 248; see also, Dowling v. Litton Loan Servicing, LP, 2006 WL 3498292 (S.D.Ohio) (same).

IV. Discussion

A. Whether Defendants are Entitled to Summary Judgment on Count One

The FMLA entitles any eligible employee suffering from a serious health condition that renders him unable to perform his job to twelve workweeks of leave during each twelve month period. 29 U.S.C. § 2612(a)(1)(D). Under certain circumstances, FMLA leave may be taken "intermittently or on a reduced leave schedule." 29 C.F.R. § 825.203(a). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any substantive FMLA right. Id. at § 2615(a)(1).

Defendants move for summary judgment on the plaintiff's claim of FMLA interference under 29 U.S.C. § 2615(a)(1), based on the threshold issue of "eligibility." Defendants argue that plaintiff was not eligible for FMLA leave because: 1) he had not worked the required number of hours at Richards in the twelve month period preceding his request for FMLA leave, and 2) he was not suffering from a "serious health condition" that rendered him "unable to perform" his job.

### 1. Hours of Service Requirement

Eligibility for FMLA leave is based on the employee having at least twelve months of service with the employer and having worked at least 1250 hours in the twelve months preceding the request for FMLA leave. 29 U.S.C. § 2611(2)(A); see also, Butler v. Owens-Brockway Plastics Products, 199 F.3d 314, 315 (6th Cir.

7

1999); Stimpson v. United Parcel Service, 351 Fed.Appx 42, 45 (6th Cir. 2009) ("only eligible employees may recover under the statute"). Defendants concede the first criteria, as plaintiff had worked for OPW from 1991 to 2007. Defendants contend that plaintiff did not meet the second criteria. Plaintiff had been off work due to the strike since 2007 and had only worked 27 days at Richards since April 12, 2010. Thus, it is undisputed that plaintiff did not physically work at least 1250 hours in the previous twelve months. See 29 U.S.C. § 2611(2)(A)(ii).

Plaintiff contends that his hours of back pay awarded under the Settlement Agreement should count toward the "hours of service" requirement, thereby rendering him eligible for FMLA leave when he requested it. Plaintiff relies on Ricco v. Potter, 377 F.3d 599, 605-606 (6th Cir. 2004), cert. denied, 540 U.S. 1063 (2003). In Ricco, the plaintiff had arbitrated, and prevailed on, a claim of wrongful termination and received a "make whole" award that included reinstatement and back pay. The Sixth Circuit Court of Appeals held that the hours of back pay could be credited to the "hours of service" requirement. Id. at 605-606 (observing "the goal of a make whole award is to put the employee in the same position that [he] would have been in had [his] employer not engaged in unlawful conduct; this includes giving the employee credit towards the FMLA's hours of service requirement for hours that the employee would have worked but for [his] wrongful termination").

Plaintiff contends that OPW's "unlawful conduct" prevented him from working after the Union made the unconditional offer to return to work (doc. no. 53 at 3) and asserts that the Settlement Agreement was essentially a "make

whole" award because he received back pay, was promised retention of his original hire date, and was recalled to a job at Richards. It is undisputed that the Settlement Agreement specified that there was "no admission of unlawful conduct" by the defendants. Defendants therefore correctly assert that there was no determination of unlawful conduct regarding the unfair labor practice charges. Plaintiff counters that "surely it is absurd to argue, as OPW has . . . , that in order to protect those reinstatement rights, Miller should have rejected the settlement and sought an adjudication on the merits, a complete waste of time, effort, and money" (doc. no. 48 at 14). He quotes Phelps Dodge Corp. v. N.L.R.B., 313 U.S. 177, 197 (1941) for the general proposition that "making [employees] whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces."

Plaintiff fails to comprehend, or refuses to accept, that he is bound by the terms of the Settlement Agreement. He may not in this case seek to prove that his employer engaged in "unlawful conduct" (i.e. unfair labor practices), as that issue has already been put to rest by the terms of the NLRB-brokered Settlement Agreement. See NLRB v. Bangor Plastics, Inc., 392 F.2d 772, 775 (6th Cir. 1967) ("A settlement agreement does not amount to a finding or admission that respondent has committed an unfair labor practice). Plaintiff may not relitigate such conduct here, as only the NLRB can make a determination of the lawfulness of conduct protected under the NLRA. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959).

Moreover, even assuming arguendo that equitable principles would allow the crediting of hours of back pay where the parties have settled (rather than arbitrated or otherwise adjudicated) unfair labor charges and negotiated an agreement that amounts to a "make whole" award, the evidence in the present case confirms that the Settlement Agreement did not actually amount to a "make whole" award.

The evidence does not support (and in fact, refutes) the plaintiff's allegations in the second amended complaint where he does not accurately characterize certain aspects of the Settlement Agreement. For example, although Settlement Agreement included a *Laidlaw* "recall" list, it did not expressly promise to "reinstate" plaintiff and other strikers to their "former positions at OPW." Plaintiff's deposition testimony confirms his understanding that he was subject to recall, not full reinstatement to his former position (Miller Dep. at 13, "I understood it to be just 'recalled' back before anybody else would be hired from the street, not the same, current position.").

Plaintiff acknowledges that he was offered employment at Richards in a different position, at a different rate of pay ($10.50 per hour) and that he knew he would be subject to Richards' leave policy, rather than OPW's leave policy (Miller Dep. at 43-45). He also acknowledges that in the new job, he had a different supervisor, was subject to a different employee handbook, and a different attendance policy. (Id.) This undermines his assertion that he had essentially received a "make whole" award. See Scott v. Harris, 550 U.S. 372, 380 (2007) (explaining that on summary judgment, a court must determined the relevant set

of facts and draw all inferences in favor of the nonmoving party *to the extent supportable by the record*). Defendants point out that plaintiff acknowledges that he was recalled (rather than reinstated), that he did not receive full back pay, and that he was not returned to the same position he worked at prior to the strike (doc. no. 54 at 3). The evidence, including the plaintiff's own deposition testimony, plainly shows that plaintiff did not receive a "make whole" award.

In sum, plaintiff physically worked less than 1250 hours at Richards in the previous 12 months, and thus, was not eligible for FMLA leave under the federal regulations. To the extent he urges that the exception of Ricco should apply, the undisputed evidence reflects that plaintiff did not receive a "make whole" award under the Settlement Agreement. Defendants have shown that the plaintiff, as non-moving party, lacks evidence to support an essential element of his case ("eligibility"). See Celotex Corp., 477 U.S. at 322-23. For these reasons, the defendants are therefore entitled to summary judgment on Count One.

**2. The FMLA Requirement of a "Serious Medical Condition" That Rendered Plaintiff "Unable to Perform His Job"**

Defendants argue a second basis for summary judgment on Count One, namely, that plaintiff was not suffering from a "serious health condition" that rendered him "unable to perform his job" (doc. no. 47 at 30).

To be entitled to FMLA leave, the plaintiff must suffer from a serious health condition that renders him unable to perform his job 29 U.S.C. § 2612(a)(1)(D). The FMLA defines a "serious health condition" as an illness, injury, impairment, or physical or mental condition that involves: (A) inpatient care in a hospital,

**11**

hospice, or residential medical care facility; or (B) continuing treatment by a health care provider. 29 U.S.C. § 2611(11); 29 C.F.R. § 825.113(a). Plaintiff did not have any inpatient care and must rely on "continuing treatment." See 29 C.F.R. § 825.115.

Under the regulations, an employee must state "a qualifying reason for the needed leave." 29 C.F.R. § 825.301(b). Defendants assert that plaintiff's form merely indicates he saw Dr. Eppley for a "cough" and was prescribed antibiotics. It is undisputed that on Friday July 9, 2010, Dr, Eppley indicated that plaintiff's sole symptom was a "cough" and that he was to return to work on Monday July 12, 2010 with "no restrictions upon return" (doc. no. 52-1 at 35). Dr. Vuong's notes from July 27, 2010 indicate that plaintiff had a "bad sinus infection – went to chest in May . . . still had bad cough and congestion" (doc. no. 47-1 at 104).

The federal regulations recognize that "ordinarily, unless complications arise, the common cold, the flu . . . are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." 29 C.F.R. § 825.113(d). Nonetheless, "if an individual with the flu is incapacitated for more than three consecutive calendar days and receives continuing treatment, e.g., a visit to a health care provider followed by a regimen of care such as prescription drugs like antibiotics, the individual has a qualifying "serious health condition" for purposes of FMLA." United States Department of Labor, Opinion Letter, Family and Medical Leave Act (FMLA), 1996 WL 1044783; see also, <u>Miller v. AT & T Corp.</u>, 250 F.3d 820, 831-32 (4th Cir. 2001) (same). Construing the

evidence in plaintiff's favor for purposes of summary judgment, the Court will give the plaintiff the benefit on this issue.

As to whether plaintiff was "unable to perform" his job due to illness, the defendants point out that plaintiff's only medical report at the time he requested FMLA leave did <u>not</u> indicate he needed to be off work. See 29 U.S.C.A. § 2612(a)(1)(D); 29 C.F.R. §§ 825.112(4), 825.113(b). Plaintiff had been off for several weeks (June 23, 2010 to July 12, 2010) and was granted unpaid personal leave during that time. Dr. Eppley informed Richards on July 9, 2010 that plaintiff could return to work on July 12, 2010 with "no restrictions." Dr. Eppley did not subsequently indicate that plaintiff needed additional time off work. Defendants correctly point out that when plaintiff requested FMLA leave on July 26, 2010, Dr. Eppley had not indicated that plaintiff needed further time off. Dr. Vuong's notes from July 27, 2010, also do not indicate that plaintiff needed to be off work.

Defendants assert that an employer may properly rely on a "negative certification" in denying FMLA leave. See, e.g., <u>Nawrocki v. United Methodist Ret. Cmtys.</u>, 174 Fed.Appx. 334, 338 (6th Cir. 2006) (holding that termination for excessive absenteeism did not violate FMLA where employee's medical certification did not indicate that employee needed time off for a qualifying reason). When an employee's certification is compete and indicates on its face that the employee is not entitled to FMLA leave, the employer may rely upon it to deny leave without further inquiry. <u>Id</u>. (citing <u>Stoops v. One Call Comm, Inc</u>., 141 F.3d 309, 311 (7th Cir. 1998) (noting that "medical evidence should come from the employee in time to save his job, not during a subsequent law suit"); <u>Hoffman v.</u>

**13**

**Prof. Med. Team**, 394 F.3d 414, 418-19 (6th Cir. 2005) (observing that although an employer must give an employee time to cure an incomplete certification, "employers have no responsibility to conduct further investigation when a certification is invalid on its face").

The Court has already determined that plaintiff was not eligible for FMLA leave in the first place (i.e., he did not meet the "hours of service" requirement). Even assuming that he was in fact eligible, and further assuming that plaintiff had stated a "qualifying reason" for FMLA leave, plaintiff's certification from his treating physician did not indicate that plaintiff needed any time off from work as of July 26, 2010. Thus, the employer had a proper basis to deny plaintiff's request for leave, and defendants would also be entitled to summary judgment on this additional ground.

**B. Whether The Court has Jurisdiction over Count Two, and If so, Whether Summary Judgment is Appropriate**

Defendants also move for summary judgment on plaintiff's claim of "fraudulent misrepresentation" under Ohio state law.

First, the Court observes that plaintiff's second amended complaint asserts only federal question jurisdiction pursuant to 28 U.S.C. § 1331 (doc. no. 43, ¶ 5). Having determined that defendants are entitled to summary judgment on the lone federal claim, the Court will decline to exercise supplemental jurisdiction over the remaining state law claim. See 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over a claim when it has dismissed all other claims over which it has original jurisdiction).

**Second, even if the Court were inclined to exercise supplemental jurisdiction, plaintiff's "claim of fraudulent misrepresentation" under Ohio law is likely pre-empted by federal labor law. See <u>Serrano v. Jones & Laughlin Steel Co.</u>, 790 F.2d 1279, 1286 (6th Cir. 1986) (affirming dismissal of plaintiffs' state fraud claims because federal labor law preempted them). In <u>Serrano</u>, the plaintiffs had characterized their cause of action as fraud claims under Ohio law in an attempt to circumvent the exclusive jurisdiction of the NLRB. <u>Id</u>. (citing <u>Garmon</u>, 359 U.S. at 236) (holding that when an activity is arguably subject to § 7 or 8 of the Act, federal courts "must defer to the exclusive competence of the National Labor Relations Board"). Section 8(d) requires an employer to bargain in good faith with respect to "wages, hours and other terms and conditions of employment," 29 U.S.C. § 158(d). In <u>Serrano</u>, as in the present case, the allegedly "fraudulent" conduct was arguably prohibited under the Labor Act, and therefore, within the exclusive jurisdiction of the NLRB. See also, 29 C.F.R. § 101.7 ("If the respondent fails to perform the obligations under [a settlement agreement], the Regional Director may determine to institute formal proceedings."); AmJur. Labor § 2003 (discussing the NLRB's authority to set aside part or all of a settlement agreement, based post-settlement conduct).**

**Here, plaintiff is essentially complaining of the results of the negotiated Settlement Agreement, under which he was recalled to a different job at Richards. As a union representative and charging party, he was represented by the Union's able counsel in connection with the settlement of the unfair labor practice**

**15**

charges. He may not challenge the Settlement Agreement under the guise of a state claim of fraud.

Finally, even if not pre-empted, the record reflects no legal or evidentiary basis for plaintiff's claim. Under Ohio law, the elements of fraudulent misrepresentation are: (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance. <u>Volbers-Klarich v. Middletown Mgt., Inc.</u>, 125 Ohio St.3d 494, 501 ¶ 27 (2010); <u>Burr v. Stark Cty. Bd. of Commrs</u>, 23 Ohio St.3d 69, 73 (1986); <u>Stuckey v. Online Resources Corp.</u>, 2012 WL 5467522, *23 (S.D. Ohio).

A complaint must allege "with particularity" the circumstances constituting the alleged fraud. Fed.R.Civ.P. 9(b). "Allegations of fraudulent misrepresentation must be made with sufficient particularity and with sufficient factual basis to support an inference that they were knowingly made." <u>Coffey v. Foamex L.P.</u>, 2 F.3d 157, 161–62 (6th Cir. 1993). This includes "the time, place, and content" of the alleged misrepresentation on which plaintiff relied. <u>CNH America LLC v. Int'l Union, United Auto., Aerospace and Agr. Implement</u>, 645 F.3d 785 (6th Cir. 2011).

In his second amended complaint, plaintiff alleges that "OPW and Richards, through the actions of Townsley and others set forth above, falsely represented to Miller that when he returned to work, he would be employed by

16

Richards, not OPW" (doc. no. 43 at ¶ 22). He alleges that Richards "was not registered as a foreign corporation" and "could not conduct manufacturing operations or hire employees in the State of Ohio" (¶ 23). Plaintiff further alleges that, at the time he agreed to return to work, he was "unaware that Richards was not registered as a foreign corporation and reasonably relied on the representation of Townsley and other that he was being hired by Richards, and not OPW" (¶ 25). He claims these "actions were untaken maliciously, solely for the purpose of depriving Miller of certain benefits, including the more liberal attendance policy applied to OPW employees" (¶ 26).

Plaintiff argues that Richards is a Tennessee entity not licensed to do business in Ohio and "has never had any existence in Ohio separate and apart from OPW" (doc. no. 53 at 7-8). He contends that Richards was a "fiction," and therefore, he was actually working for OPW (doc. no. 48 at 15).

The premise of plaintiff's argument reflects a misapprehension of the relevant law. See <u>Beard</u>, 548 U.S. at 529-30 (explaining the difference between evidence of disputed material facts and mere professional disagreements as to the legal implications of those facts). Contrary to plaintiff's allegation, Ohio R.C. § 1703.29(A) expressly preserves the validity of contracts entered into by unlicensed corporations. See 13 Ohio Jur.3d Bus.Rel. 1305 ("The Foreign Corporations Law specifically provides that the failure of a foreign corporation to obtain a license to do business in Ohio does not affect the validity of any contract entered into by such corporation."). Defendants cite numerous cases so holding (doc. no. 54 at 16). Additionally, although plaintiff complains that the defendants

<u>17</u>

did not advise him that Richards was not registered in Ohio, "silence is only actionable misconduct where there exists a duty to disclose." Perkins v. Wells Fargo Bank, N.A., 2012 WL 5077712, *10 (S.D.Ohio) (citing Diebold Credit Corp., 2003–Ohio–6874, at ¶ 20)). Plaintiff fails to explain why the defendants would have any "duty" to disclose Richards' status as a Tennessee corporation. Foreign status did not render the existence of Richards "fictional."

Moreover, the evidence reflects that the terms of plaintiff's employment were represented accurately. He was told in clear terms that he would be subject to the terms and conditions of employment at Richards and was provided an employee handbook for Richards that set forth the relevant leave policy. He accepted such terms and agreed to work at Richards. He was aware that its policies would govern his employment (doc. no. 47-1 at 58, Letter). Plaintiff acknowledged at deposition that HR Manager Linda Townsley did not make any false statements to him. There is simply no "genuine dispute" regarding any material facts here. Thus, even if jurisdiction existed, defendants would be entitled to summary judgment as a matter of law.

## V. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have extensively briefed the relevant issues. The Court finds that the pleadings and exhibits are clear on their face, and that oral argument is not warranted. Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, 975 F.2d 300, 301-02 (6th Cir. 1992); Schentur v. United States, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district

courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the plaintiff's "Motion for Summary Judgment" (doc. no. 47) is DENIED; the defendants' "Motion for Summary Judgment" (doc. no. 48) is GRANTED as to Count One (the FMLA claim); Count Two is DISMISSED for lack of jurisdiction; this case is DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

              s/Herman J. Weber
              Herman J. Weber, Senior Judge
              United States District Court